51 CCPA
**The ENGLANDER COMPANY, Inc.,**
**Appellant,**

v.

**AIRELOOM BEDDING COMPANY,**
**Appellee.**

**Patent Appeal No. 7161.**

United States Court of Customs
and Patent Appeals.

April 9, 1964.

Bartholomew Diggins, Washington, D. C., for appellant.

Richard P. Schulze, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board (135 USPQ 412) granting appellee's petition to cancel Registration No. 701,809 on the Principal Register, dated July 26, 1960, granted on application Ser. No. 76,377, filed June 24, 1959, on the mark "AIRLON" for "flexible foam cut to size for cushioning, mattresses, and upholstery." The first use of the mark claimed was April 9, 1959.

Petitioner-appellee, Aireloom Bedding Company, took testimony and also relies on two registrations granted prior to appellant's date of first use, as follows: Reg. No. 568,299, Dec. 23, 1952, of *"Aireloom Bedding"* for mattresses, box springs and bed bolsters, Principal Register; Reg. No. 570,013, Feb. 3, 1953, of *"Airloom"* for mattresses, box springs, and bed bolsters, excluding rubber mattresses, Principal Register.

In addition to its registrations, appellee proved use and promotion of its "Aire-

loom" mark which the board summarized as follows:

"Petitioner's record shows that it has continuously, since about the fall of 1951, used the mark 'AIRELOOM' on and in connection with the sale of mattresses, box springs, and upholstered furniture such as sleepers, chairs, and sofas of its manufacture. The mark "AIRELOOM' is applied to silk labels which are attached to the mattresses and box springs and to the decking under the cushions of the upholstered furniture. In addition the mark is applied to guarantee cards which are affixed to petitioner's bedding products and upholstered furniture. Petitioner has, since 1951, expended a sum in excess of one hundred and forty-five thousand dollars in advertising 'AIRELOOM' products through such media as radio and television, magazines, newspapers, directories, and folders of various types mailed through dealers to prospective customers. 'AIRELOOM' products are sold directly to department stores, furniture stores, and decorator shops located primarily throughout eleven Western States. Sales of 'AIRELOOM' mattresses and box springs exceeded sixty thousand dollars for the fiscal year 1951 and approximated a half million dollars for the fiscal year ending May 31, 1961."

Appellant has presented its case for reversal of the board as involving two issues: (1) whether, in view of the differences in the marks, the board erred in finding likelihood of confusion; and (2) whether the board erred in considering evidence relating to use of appellant's "AIRLON" mark in association with finished mattresses.

■ Assuming, arguendo, that the marks of both parties are applied to mattresses, that is to say to identical goods, we have no doubt about the correctness of the board's holding that confusion as to the origin of the products sold under the marks "is reasonably likely to occur" by reason of the similarity of the marks.

On the second point, appellant argues that the lower tribunal made an unlawful and unjustified excursion into the "trade practices" of appellant instead of restricting itself to the goods named in the registration. The gist of the argument is that appellant's goods consist of "foam cut to size" and do not include mattresses.

Appellant made similar arguments before the board. They were held to be not well taken for several reasons. The description of goods, noted above, is not merely foam cut to size but cut to size for particular purposes, among others, "for * * * mattresses * * *." At least that is one way to read the description of goods. Appellee seems to ask us to read that description as designating mattresses per se. There seems to be some ambiguity but we doubt the latter is a correct reading. We need not resolve this problem. One of the speciments accompanying appellants application to register the mark sought to be cancelled is a rectangular label on which are the words

"Englander

THE FINEST NAME IN SLEEP

AIRLON"

The label appears to be a mattress label and was submitted as "showing the trademark, as actually used in connection with its goods," meaning the goods named in the application and registration. There is also in the application file another label which reads

"Englander

Airlon

MATTRESS

THE FINEST NAME IN SLEEP"

Appellant's only comments about this label are that while it is in the file nobody knows how it got there and that it is this label which "got the Patent Office off on the wrong track." It seems to us to be sufficient, however, to remove any

doubt about the first label above noted being a mattress label and to show that the manner of use of the registered mark in connection with at least some of the goods named in the registration is to apply it to mattresses containing "flexible foam cut to size for * * * mattresses," that being the way in which those goods are marketed by appellant.

■■ The board was quite right, in our judgment, in saying that the question of likelihood of confusion cannot be determined in a vacuum but must be based on facts as they appear in the marketplace. There is ample additional evidence of record to show that the foregoing uses of the "AIRLON" mark were not exceptional and that its use on mattresses extended into retail stores where appellee's witnesses saw it. It seems to us that appellant is asking us to restrict the plain import of its registration in an unrealistic manner and to pretend that it is not used in connection with mattresses at all but merely on foam which might be sold to mattress manufacturers, a different group than the purchasers of mattresses. The record fails to support this position. The evidence shows that appellant's manner of using the registered mark in connection with the sale of goods enumerated in the registration carries it into the same channels of trade, on the same goods, and before the same potential purchasers as those where appellee's registered marks appear. Appellant took no testimony to show the contrary.

Both of the issues posed by appellant on this appeal are, for the foregoing reasons, decided against it.

The decision of the board is affirmed.

Affirmed.